**Gurumurthy KALYANARAM,**
**Appellant,**

v.

**Dan BURCK, Franklyn Jenifer, Charles Chaffin, Gwen Aguirre, Robert Lovitt, Hasan Pirkul, and Hobson Wildenthal, Appellees.**

No. 08–05–00132–CV.

Court of Appeals of Texas,
El Paso.

June 8, 2006.

eventual outcome of Ms. Mills' express warranty claim in any subsequent trial court proceedings.

**294**

Cameron Davis Gray, Law Office of Cameron D. Gray, Dallas, for Appellant.

William T. Deane, Asst. Atty. Gen., Austin, for Appellees.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

This is an appeal from a grant of a summary judgment. Appellees moved for both a traditional summary judgment and a no-evidence motion for summary judgment. The trial court granted both motions in favor of Appellees. On appeal, Appellant argues the trial court erred in granting the motions because: (1) Res Judicata does not bar his claim for malicious prosecution; (2) the release agreed to by Appellant does not address the claim for malicious prosecution; (3) the trial court erred when it granted the no-evidence summary judgment as to the claim of duress because Appellant submitted sufficient evidence of duress; (4) the trial court should not have considered the no-evidence summary judgment motion because it was submitted in violation of a governing scheduling order; and (5) Appellees were estoppel from relying on the settlement agreement because Appellant proved duress. We affirm.

Appellant Gurumurthy Kalyanaram was a faculty member employed by the University of Texas at Dallas ("UTD or University"). In August of 1998, Appellant's administrative assistant lodged allegations of misconduct concerning reimbursement expenses to University officials. Appellant was informed of the allegations of misconduct concerning these reimbursements the next month.

Appellant denied any wrongdoing and an internal review was conducted by the University. By letter dated December 9, 1998, Appellant was asked to step down as Academic Director of Masters Programs and Chair of Masters Program Committee, Area Coordinator for the Marketing Group, and Senior Faculty Liaison for External Affairs. Appellant was officially no-

tified of the allegations of misconduct by letter dated December 10, 1998.

Subsequent to these allegations, Appellant met with University officials and after the meeting, he retained the services of a lawyer. At some point after the University officials initially informed Appellant of the allegations, he sent a letter to each member of the Board of Regents of the University System of Texas alleging that UTD officials had engaged in fraudulent activity in connection with the "Cohort MBA Program." Appellant also filed five separate lawsuits in both Federal and State courts including a suit to enjoin an internal academic investigation by UTD administration and faculty members.

Pursuant to a settlement agreement and release ("the release"), Appellant agreed to dismiss with prejudice the five pending suits and resign his faculty position at UTD in exchange for a sum certain to be paid in settlement of the claims. After entering into the settlement agreement, orders of dismissal were entered.

Appellant was subsequently indicted on felony counts of theft and securing execution of documents by deception in May of 1999. On June 26, 2002, Appellant was acquitted on both charges. Appellant then filed suit against the University of Texas at Dallas, the University System of Texas, and various named defendants in their "individual and official capacity." A plea to the jurisdiction was granted by the trial court and Appellant's claims against the University of Texas at Dallas and the University of Texas System were dismissed with prejudice. Appellee's moved to sever the dismissed claims and for final judgment on those claims and the motion was granted.

After the plea to the jurisdiction was granted, Appellant filed a second amended petition alleging malicious prosecution, conspiracy to commit malicious prosecu-

tion, and setting forth the affirmative defense of duress. Appellees moved for summary judgment and a hearing was held in August of 2004. After the hearing, Appellees filed a no-evidence summary judgment on Appellant's affirmative defense of duress. By order dated February 21, 2005, the trial court granted Appellees' "First Amended Second Motion for Summary Judgment" and "First Supplemental No–Evidence Motion for Summary Judgment."

## Standards of Review

The standards for reviewing traditional and no-evidence summary judgment rulings are well-established. The movant for traditional summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* TEX. R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Duran v. Furr's Supermarkets, Inc.,* 921 S.W.2d 778, 784 (Tex.App.-El Paso 1996, writ denied). When a defendant is the movant for summary judgment, it must either disprove at least one element of the plaintiff's theory of recovery or conclusively establish all essential elements of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678–79 (Tex.1979).

Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston,* 589 S.W.2d at 678–79. In determining whether there is a disputed material fact issue precluding summary judgment, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including

any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *DeLuna v. Guynes Printing Co. Of Texas, Inc.*, 884 S.W.2d 206, 208 (Tex. App.-El Paso 1994, writ denied).

A no-evidence summary judgment under Rule 166a(i) is essentially a pretrial directed verdict and as such, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wyatt v. Longoria*, 33 S.W.3d 26, 31 (Tex.App.-El Paso 2000, no pet.). The party moving for no-evidence summary judgment must assert that there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial. *See* Tex. R.Civ.P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements. *See id.* To raise a genuine issue of material fact, the non-movant must set forth more than a scintilla of probative evidence as to an essential element of the non-movant's claim or defense. *See id.; Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

More than a scintilla of evidence exists when the evidence " 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of the existence of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/ Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). As with a traditional summary judgment, we view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *See Havner*, 953 S.W.2d at 711.

■ Where the trial court has granted summary judgment without specifying the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

■ In Issue Two, Appellant argues that the trial court erred in granting the Appellees' motion for traditional summary judgment. Appellant contends that his claims were not barred by the doctrine of release because the release does not address an unaccrued cause of action and three of the Appellees are not beneficiaries to the agreement.

As a preliminary matter, Appellant suggest that there is no evidence before this Court or the trial court to support a finding of release. When Appellees filed the first motion for summary judgment, they did not attach a copy of the release to the motion. Instead, a notice was attached to the motion which stated that the release "was submitted only to Judge Jay Patterson for *in camera* inspection." [Emphasis in original].

We note that Appellant did not object to the summary judgment evidence during the hearing. Further, on appeal, Appellant has failed to cite any relevant legal authority in support of his argument. Appellant has waived this argument. *See Velasquez v. Waste Connections, Inc.*, 169 S.W.3d 432, 435–36 (Tex.App.-El Paso 2005, no pet.). However, even if Appellant preserved this error and cited relevant case law in support of his position, we disagree with his argument.

■ Although the release was not attached to the motion, it is clear from the record that the release was before the court. Appellees properly filed a motion

to seal which was never addressed by the court. Further, the final order states that "[a]fter considering the pleadings, motions, responses, evidence on file, and Plaintiff's replies the Court is of the opinion that Defendants motion[s] are meritorious. . . ." Finally, the release was properly attached to a third motion for summary judgment filed before the court rendered a decision.

 Appellant next argues that the release does not address the cause of action for malicious prosecution. We again disagree. A release is an agreement or contract in which one party agrees that a duty or obligation owed by the other party is discharged immediately on the occurrence of a condition. *National Union Fire Ins. Co. Of Pittsburgh, P.A. v. Insurance Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex.App.-Houston [14th Dist.] 1997), *affd*, 20 S.W.3d 692 (Tex.2000). A release extinguishes a cause of action and bars recovery on the released matter. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). To effectively release a claim, the release must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991). Although the agreement must "mention" the claim to be effective, the parties need not identify each potential cause of action relating to the subject matter of the release. *See Keck, Mahin & Cate v. National Union Fire Insurance Company of Pittsburgh, P.A.*, 20 S.W.3d 692, 698 (Tex.2000). Further, although releases include claims existing at the time of execution, they may also include unknown claims and damages that develop in the future. *See Keck, Mahin & Cate*, 20 S.W.3d at 698.

 Under Texas law, a release is a contract. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990). As such, a release should be interpreted like any other contract. *Stroop v. Northern County Mut. Ins. Co.*, 133 S.W.3d 844, 851 (Tex. App.-Dallas 2004, pet. denied). Deciding whether a contract is ambiguous is a question of law for the court. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). In construing a contract, it is the primary task of this Court to determine the parties' true intentions as expressed in the agreement. *See id.* at 393; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Webster*, 128 S.W.3d at 229.

 If the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law. *Id.* On the other hand, a contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Frost Nat. Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 312 (Tex.2005). If the contract is unambiguous, the court must enforce the contract as written. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). If a contract is ambiguous, then interpretation of the contract presents a fact issue for the jury. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

In construing the agreement, it should be read as a whole rather than by isolating any one phrase, sentence, or section of the agreement. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995). Finally, the language in the agreement should be given a plain grammatical meaning unless to do so would defeat the parties intent. *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex.1999).

Appellant argues that by its own terms, the release is limited to all claims that could have been brought at the time of the

agreement or that are expressly set forth in the agreement itself. Appellant relies on *Victoria Bank & Trust Co. v. Brady* for the proposition that general, categorical releases must be narrowly construed. *See Brady,* 811 S.W.2d at 938. *Brady* specifically held that to effectively release a claim in Texas, the releasing instrument must "mention" the claim to be released. *Id.*

The Supreme Court subsequently clarified the holding of *Brady. See Keck, Mahin & Cate,* 20 S.W.3d at 697–98. At issue in *Keck, Mahin & Cate,* was an agreement which arguably released claims against a party. The appeals court interpreted the agreement narrowly relying on *Brady.* The Court stated that the agreement at issue in *Brady* was interpreted narrowly because it specifically limited itself to a certain transaction and thus could not be extended to a separate transaction. *Keck, Mahin & Cate,* 20 S.W.3d at 698. However, the agreement in *Keck, Mahin & Cate* was much broader and was not limited to any specific claim or transaction. *Id.* The Court went on to explain that *Brady* simply stands for the proposition that to be effective, the agreement must "mention" the claim. *Id.*

We are called upon to determine whether or not the release "mentions" Appellant's cause of action for malicious prosecution. Appellant directs our attention to two individual sections of the agreement as relevant to his issue. First, to Article 5 which states:

> Dr. GK ... agrees not to initiate any suit or claim ... [on] any and all claims, demands, and causes of action of any nature, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, including those raised in the Lawsuit and/or during or out of the employment relationship between Dr. GK, and the University of Texas at Dallas and/or the System,

which Dr. GK or anyone claiming by and through him ever had, now or hereafter can or shall or may have, arising out of or based on any event or events from the beginning of the world to the date of this Agreement, specifically including, but not limited to any claim arising from Dr. GK's relationship with or employment by the University of Texas Parties....

Next, Appellant directs our attention to Article 3, section (a) which states:

> These payments shall be paid as a full and final settlement of all claims which have accrued for damages and attorney's fees and costs.... These payments shall be paid as full settlement of all claims for any and all alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.;* for alleged violations of the Texas Whistle Blower Act, Tex. Gov.Code § 544.001 *et seq.;* for the alleged violations of the First Amendment pursuant to 42 U.S.C. § 1983; for alleged violation of Fourteenth Amendment procedural and substantive due process; for claims of Civil Extortion, Wrongful Threat, Abuse of Process, Intentional Infliction of Mental Anguish, Tortuous Interference with Contract, and Defamation; for alleged violations of civil rights, and threats of coercion and/or retaliation, including claims pursuant to 42 U.S.C. § 1983; for claims of mental anguish and pain and suffering; for claims for injunctive relief, and claims for attorney's fees, costs, and expenses for recovering same.... Dr. G.K. further releases all claims, waives all rights of recovery, and covenants not to sue for lost wages, past and future earnings, or other items of employment compensation known or unknown as of the date of this Settlement Agreement or which could have been raised in the lawsuits

and/or out of the employment relationship between Dr. G.K. and the University of Texas at Dallas or the University of Texas System through the date of this agreement.

 For the release to "mention" a claim, it does not have to specifically describe a particular cause of action. *See Memorial Medical Center of East Texas v. Keszler,* 943 S.W.2d 433, 434 (Tex.1997). The resolution of this issue turns on our application of *Keszler.* In *Keszler,* the court of appeals held that for a claim to be "mentioned," it had to be specifically enumerated within the release. *Id.* at 434. The Supreme Court disagreed. *Id.*

At issue in *Keszler,* was a release entered into between a doctor and a hospital which had revoked his staff and clinical privileges after he had been found guilty of tampering with government documents. Subsequent to entering into the release, the doctor filed suit for exposure to ethelyne oxide gas, a claim which was unrelated to the original dispute. *Keszler,* 943 S.W.2d at 434. The agreement stated that the parties released all claims related to the relationship between the doctor and the hospital. *Id.* The Supreme Court found that because the exposure claim was related to the relationship between the parties, it was "mentioned" by the agreement. *Id.* at 435.

If we were to read Article 3(a) of the agreement in isolation, we might agree with Appellant's contention that the release does not "mention" the claim for malicious prosecution. However, when reading this article in light of the whole agreement, it is clear that the agreement encompasses more than simply those claims set forth in Article 3(a) and hence does "mention" the claim.

Article 1 states "[t]his Agreement is entered into for the purposes of resolving and settling all civil claims, causes of ac-

tion, differences, disputes, and controversies the parties have or may have that *arise out of the subject matter of this litigation,* to compromise and settle all such matters...." [Emphasis added]. Next, Article 5 includes:

[A]ny and all claims, demands, and causes of action of any nature, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, including *those raised in the Lawsuit and/or during or out of the employment relationship between Dr. GK, and the University of Texas at Dallas and/or the System,* which Dr. GK ... ever had, now or hereafter can or shall or may have, arising out of or based on any event or events from the beginning of the world to the date of this Agreement, *specifically including, but not limited to any claim arising from Dr. GK's relationship with or employment by the University of Texas Parties* .... [Emphasis added].

It is clear after a plain reading of the release, in light of *Keszler,* that any claim that arose from the employment relationship between Appellant and the University of Texas at Dallas is "mentioned" by the release, even if the cause of action did not accrue until termination of the prosecution. Although the prosecution of Appellant occurred after entering into the release, any claim for malicious prosecution would be based on actions of the parties that occurred during the "relationship with or employment by the University." To put it another way, but for the employment relationship between Appellant and the University of Texas at Dallas, no criminal prosecution would have occurred.

But the release goes much further than just claims or causes of action arising out of the employment relationship. The release covers "any and all claims ... known

or unknown, suspected or unsuspected, fixed or contingent ... *including* those raised in the Lawsuits and/or during or out of the employment relationship...." [Emphasis added]. Further, the release addresses any claims Appellant *"ever had, now or hereafter can or shall or may have,* arising out of or based on any event or events from the beginning of the world to the date of this Agreement...." [Emphasis added]. As such, any actions taken by Appellees in securing the prosecution of Appellant would be covered by the release.

■■■■■ Appellant next contends that the release cannot operate to release his claims against Appellees Dan Burck, Charles Chaffin, and Robert Lovitt because they were not identified as parties to the release. A release discharges only those persons or entities that it names or specifically identifies. *McMillen v. Klingensmith,* 467 S.W.2d 193, 196 (Tex.1971). One can claim the protection of a release only if the release refers to him or her by name or with such descriptive particularity that his or her identity or connection with the event is not in doubt. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420 (Tex.1984). "[T]he *McMillen* requirement of specific identification is not met unless the reference in the release is so particular that 'a stranger could readily identify the released party.'" *Id.* at 419.

The release signed by Appellant applies to "the University of Texas System ... the University of Texas at Dallas ... and Dr. Hasan Pirkul, Dr. Hobson Wildenthal, Dr. Franklyn G. Jenifer, Dr. William Cunningham and Gwen Aguirre individually ... and in their official capacities...." The release further states that "Dr. GK ... hereby releases ... the University of Texas System, University of Texas at Dallas, Dr. Hasan Pirkul, Dr. Hobson Wildenthal, Dr. Franklyn G. Jenifer, Dr. William Cunningham, and Gwen Aguire, any and all of

their *employees,* agents, officers, directors, executors, estates, insurers, *and any other person or entity who or which may be liable through it* ...." [Emphasis added].

Appellant would have us read the release as including employees only in their official capacity or as stated by Appellant, "individuals who may be liable derivatively through UT System or UTD." This, however, misconstrues the language of the release. The release clearly identifies "employees ... *and* any other person or entity who or which may be liable through it...." [Emphasis added].

The issue for our consideration is whether or not the class of "employees" is sufficiently descriptive enough to meet the *Duncan* requirement. The test in determining the parties included in a waiver agreement is whether a stranger could readily identify the released party. *Duncan,* 665 S.W.2d at 419–20. However, we do not read *Duncan* or its progeny as requiring in every instance each person or entity claiming the benefit of a release to be specifically named. *See Winkler v. Kirkwood Atrium Office Park,* 816 S.W.2d 111, 113–14 (Tex.App.-Houston [14th Dist.] 1991, writ denied)(waiver naming "the Club" covered "all individuals and entities involved"); *see also Vera v. North Star Dodge Sales, Inc.,* 989 S.W.2d 13, 19 (Tex. App.-San Antonio 1998, no pet.)(release of named principal from any liability associated with the sale also released the employees associated with that sale).

Any claims Appellant has against Appellees Dan Burck, Charles Chaffin, and Robert Lovitt relate to actions taken by them on behalf of UTD and Appellant has not indicated otherwise. We therefore find that the named class "employees" is sufficiently descriptive so that even a stranger to the agreement could readily understand and recognize that the release intended to include employees of UTD. To this ex-

tent, Appellant's second issue is over-ruled.[1]

### Duress

Because Issues Three and Five are related, we will address them together. In Issue Three, Appellant argues the court erred by granting Appellees' second no-evidence summary judgment motion on his affirmative defense of duress. In Issue Five, Appellant argues that because duress was proven, Appellees are estoppel from relying on the settlement agreement.

To establish a claim for duress, Appellant must show the following elements: (1) a threat or action was taken without legal justification; (2) the threat or action was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it to do that which it would not otherwise have done and was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection. *McMahan v. Greenwood*, 108 S.W.3d 467, 482 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *see also Gigout v. C & L Constructors, Inc.*, No. 01–96–01109–CV, 1999 WL 191324 *4 (Tex.App.-Houston [1st Dist.] April 8, 1999, pet. denied)(not designated for publication)(applying elements in the context of duress as a result of a threat of criminal prosecution).

To support his argument that he raised more than a scintilla of evidence as to his claim of duress, Appellant directs our attention to three documents. The first document is an affidavit dated July 28, 2004. The second and third documents are portions of deposition testimony taken from both Appellant and his wife. At the out-set, we note that the affidavit Appellant relies on in this appeal was not attached to or referenced in his response to Appellee's no-evidence summary judgment motion. Rather, the affidavit was attached to an earlier filed response to Appellees' traditional summary judgment motion.

Unlike a traditional summary judgment motion, when an opponent files a no-evidence summary judgment motion, the burden shifts to the non-movant to specifically point out evidence raising a fact issue. *Saenz v. Southern Union Gas Co.*, 999 S.W.2d 490, 493 (Tex.App.-El Paso 1999, pet. denied). Although the nonmovant is not required to "needlessly duplicate evidence already found in the court's file," he is required to make sure the evidence is properly before the trial court for its consideration in ruling on the motion for summary judgment. *Saenz*, 999 S.W.2d at 494. "[A] nonmovant does not meet this requirement by the mere existence in the court's file of a response to an earlier summary judgment motion." *Id.*

Because the affidavit dated July 28, 2004 was neither attached to or referenced in the response to the no-evidence summary judgment, it was not before the trial court when it granted the motion and this Court will not consider it. *See also Trejo v. Laredo Nat. Bank*, 185 S.W.3d 43, 49 (Tex. App.-San Antonio 2005, no pet.)(holding photographs attached to a response to second no-evidence summary judgment motion were not before court when it ruled on first no-evidence motion). The only documents specifically referenced in or attached to Appellant's response consist of: (1) an affidavit of Appellant dated December 7, 2004; (2) excerpts from the deposi-

---

1. The trial court did not specify the grounds relied on in its final order. Because we find that the trial court properly granted summary judgment based on the doctrine of release, we do not reach Appellant's claim in Issue One that summary judgment based on *res judicata* was improper. *See State Farm Fire & Cas. Co.*, 858 S.W.2d at 380.

tion testimony of Appellant; and (3) excerpts from the deposition testimony of Padma Rajagopal, wife of Appellant.

We will consider the affidavit of December 7, 2004 in determining whether or not Appellant has presented more than a scintilla of evidence as to duress. In this affidavit, Appellant states that UTD forwarded "[A]guirre's accusations to the Collin County District Attorney on December 11, 1998." Appellant, in the same affidavit, states that he signed the agreement based on "assurances that they would collectively withdraw and abandon their frivolous and malicious criminal accusations...." Appellant makes it clear in his affidavit that he *knew* that the charges had been forwarded to the District Attorney at the time he executed the settlement agreement. Appellant states that "[b]efore the actual mediation ... my counsel and I made direct inquiry as to ... criminal charges maliciously filed by the UT defendants the prior year." Appellant also states that the settlement agreement was "materially premised ... [on] assurances that they would collectively withdraw and abandon their ... criminal accusations...."

Appellant now argues that the threat of criminal prosecution, which was carried out by UTD by forwarding information to the District Attorney's Office two years prior to entering into the agreement, caused duress sufficient to void the agreement. However, once UTD forwarded the information to the District Attorney, the threat of prosecution no longer emanated from UTD, but rather from the District Attorney's Office. Duress or undue influence can suffice to set aside a contract, but it is well-settled that it must originate from one who is a party to the contract. *See, e.g., Dimmitt v. Robbins,* 74 Tex. 441, 12 S.W. 94, 97 (1889); *Kosowska v. Khan,* 929 S.W.2d 505, 508 (Tex.App.-

San Antonio 1996, writ denied); *In re Marriage of Banks,* 887 S.W.2d 160, 163–64 (Tex.App.-Texarkana 1994, no writ); *King v. Bishop,* 879 S.W.2d 222, 224 (Tex. App.-Houston [14th Dist.] 1994, no writ). Courts will not invalidate contracts on grounds of duress when the alleged duress derives from a third person who has no involvement with the opposite party to the contract. *King,* 879 S.W.2d at 224, *citing Dimmitt,* 12 S.W. at 97.

Appellant also directs our attention to portions of the deposition testimony of both himself and his wife taken in 1999. During the deposition, Appellant was asked by opposing counsel if he knew what result a criminal conviction would have on his status as a permanent resident. Appellant's wife was also questioned about residency status but not as to the result of a criminal conviction on that status. Appellant points to these questions by opposing counsel as evidence of a threat.

In the affidavit attached to Appellant's response to the no-evidence summary judgment motion, he states that "[t]hese statements made me feel intimidated and *threatened with the danger of being deported...."* We note that Appellant did not say the statements of counsel for Appellees, which were made during the deposition, subsequently induced or influenced him into executing the settlement agreement and release. We find that Appellant has failed to present more than a scintilla of evidence that a credible threat existed. Therefore, Appellant has failed to meet his burden with respect to an essential element of his defense of duress. We affirm the judgment of the trial court granting Appellees' no-evidence summary judgment motion as to Appellants claim of duress. Issue Three is overruled. Additionally, because we find no evidence of duress, Issue Five is also overruled.

In his fourth issue, Appellant argues that the no-evidence motion of Appellees

should not have been considered by the trial court. Appellant makes the argument that because the trial court sustained an objection to the motion on the basis of timeliness under the scheduling order, the trial court subsequently erred in granting that same motion. Appellant points to a docket sheet entry stating "[g]ranted Defendants' First Supplemental No–Evidence Motion for Summary Judgment as to New Duress Claim except as to waiver of sovereign immunity[;] sustained Plaintiff's objection of lateness under the scheduling order" as support for his proposition.

A docket sheet entry is inherently unreliable because it lacks the formality of an order or a judgment. *See Garza v. Tex. Alcoholic Beverage Comm'n,* 83 S.W.3d 161, 167 (Tex.App.-El Paso 2000), *aff'd,* 89 S.W.3d 1, 6 (Tex.2002). As we stated in *Garza,* it was perhaps due to this unreliability that a docket sheet entry was generally considered insufficient to constitute a judgment or decree of the court, especially if the docket sheet entry was unsigned. *Id.* at 7. Docket sheet entries such as this cannot be used to overrule or contradict a written order of the trial court. *See id.* at 7; *citing N–S–W Corp. v. Snell,* 561 S.W.2d 798, 799 (Tex.1977); *Springer v. American Zurich Ins. Co.,* 115 S.W.3d 582, 587–88 (Tex. App.-Waco 2003, pet. denied)(trial courts ruling was determined by actual motion, not by conflicting docket sheet entry). The trial court granted Appellees' motion for a no-evidence summary judgment motion in a written order. That ruling must prevail despite the apparently conflicting notation on the unsigned docket sheet. We therefore overrule Issue Four.

We affirm the trial court's judgment.