# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00642-CV

**Gurumurthy Kalyanaram, Appellant**

**v.**

**The University of Texas System, The University of Texas at Dallas,
Dr. Franklyn G. Jenifer, Dr. Hobson Wildenthal, Dr. Hasan Pirkul and Robert Lovitt,
Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261st JUDICIAL DISTRICT
## NO. GN402205, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant, Gurumurthy Kalyanaram, filed a petition for bill of review seeking to set

aside a final judgment rendered pursuant to a settlement agreement that he reached with appellees,

the University of Texas System, the University of Texas at Dallas ("UTD"), Franklyn Jenifer,

Hobson Wildenthal, Hasan Pirkul, and Robert Lovitt (collectively, "the University").[1]  Claiming

that the University procured the settlement agreement through fraud and duress, Kalyanaram

sought to reopen the lawsuit underlying it.[2]  The University filed a "no-evidence" motion for

---

[1]  Appellee Lovitt was not a signatory to the settlement agreement, but as a University of
Texas System employee he was bound by it.

[2]  The lawsuit Kalyanaram sought to reopen in Travis County was one of several that
Kalyanaram filed against University-related defendants.  Kalyanaram has attempted to reopen or
pursue other related suits as well.  *See Kalyanaram v. University of Tex. Sys.*, 230 S.W.3d 921
(Tex. App.—Dallas 2007, pet. denied); *Kalyanaram v. Burck*, 225 S.W.3d 291 (Tex. App.—El Paso
2006, no pet.).

summary judgment, which the district court granted. This appeal followed. We will affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Previous Civil and Criminal Proceedings*

Kalyanaram was a professor at UTD from 1988 to 2000. In 1998, UTD officers accused Kalyanaram of certain crimes and offered him the choice of either resigning or having the accusations referred to the Collin County District Attorney. Kalyanaram refused to resign, and UTD referred the accusations. Kalyanaram filed several civil suits against the University related to these events, including one in Travis County District Court. In 2000, Kalyanaram and the University resolved five of these suits, including the Travis County suit, in a Settlement Agreement and Mutual General Release. Accordingly, the District Court rendered a final judgment and order of dismissal with prejudice in the suit filed in Travis County.

As Kalyanaram's civil suits continued, parallel criminal proceedings began. The Collin County District Attorney obtained an indictment of Kalyanaram in 2000 and another in 2002. Kalyanaram stood trial and was acquitted of all charges in 2002.

### *Present Lawsuit*

In 2004, Kalyanaram filed a petition for bill of review seeking to reopen his Travis County civil suit against the University. He alleged that the University violated the parties' 2000 settlement agreement by continuing to pursue criminal charges against him and by failing to notify

2

him of its ongoing contact with the district attorney. Kalyanaram alleged that the University had procured the settlement agreement through fraud and duress.

The University filed a "no-evidence" motion for summary judgment, asserting both that it had sovereign immunity from Kalyanaram's claims and that Kalyanaram presented no evidence to satisfy the prerequisites of a fraud- or duress-based bill of review. *See* Tex. R. Civ. P. 166a(i). In response, Kalyanaram filed evidence consisting of, among other things, affidavits, deposition and trial transcripts, correspondence, and discovery responses. Regarding immunity, he argued that pursuant to *Texas A&M University-Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002), the University was not immune from suits pertaining to the settlement agreement because it was not immune from suits for the "Whistleblower Act-type" claims underlying the settlement agreement. *See* Tex. Gov't Code Ann. § 554.0035 (West 2004).

Without stating specific grounds, the trial court signed an order granting the University's no-evidence summary judgment motion and dismissing Kaylanaram's bill of review "without prejudice." This appeal followed.

**STANDARD OF REVIEW**

A party seeking a no-evidence summary judgment asserts that there is no evidence of one or more essential elements of a claim on which the opposing party will have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). If the nonmovant produces more than a scintilla of probative evidence raising a genuine issue of material fact as to each challenged element on which he has the burden of proof, summary judgment is improper. *Id.* More than a scintilla of probative evidence exists when reasonable,

3

fair-minded people could differ in their conclusions. *Chapman*, 118 S.W.3d at 751. Less than a scintilla of evidence exists when the evidence creates no more than mere surmise or suspicion. *Id*. In reviewing a grant of summary judgment, we take as true all evidence favorable to the nonmovant, making every reasonable inference and resolving all doubts in the nonmovant's favor. *Id*.

A summary judgment cannot be affirmed on grounds other than those specified in the motion. Tex. R. Civ. P. 166a(c). If a motion asserts multiple grounds and the trial court's order does not specify the grounds on which the summary judgment was granted, we must affirm if any of the grounds specified in the motion have merit. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

**DISCUSSION**

*Bill of Review*

"A bill of review is an independent, equitable action to set aside a judgment that is no longer appealable or subject to a motion for new trial." *Miller v. Ludeman*, 150 S.W.3d 592, 595 (Tex. App.—Austin 2004, no pet.). Because of the critical importance of finality in judgments, bills of review "'are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted.'" *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950) (quoting *Harding v. W.L. Pearson & Co.*, 48 S.W.2d 964, 965-66 (Tex. Comm'n App. 1932, holding approved)). A party seeking a bill of review must allege and prove that (1) he had a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making because of fraud, accident, or wrongful act of the opposite party, (3) that was untainted by any fault or negligence of his own. *See Chapman*, 118 S.W.3d at 752; *Hagedorn*,

4

226 S.W.2d at 998. A petitioner must satisfy all three requirements before he can obtain a bill of review. *See id.*

### *Sovereign Immunity*

"Sovereign immunity" refers to the State's immunity from suit and liability. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Sovereign immunity protects the State and all divisions of its government, including universities. *Id.* Immunity from suit bars an action against the State unless the State expressly consents. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). A party suing a governmental entity must establish the State's consent through a statute or express legislative permission. *Id.* Trial courts lack subject matter jurisdiction over suits to which the State has not consented. *Id.* Plaintiffs bear the burden of establishing the trial court's jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Here, Kalyanaram bore the burden of showing that the University had waived immunity from suit. The University properly put Kalyanaram to his proof by raising its sovereign immunity defense in a motion for summary judgment. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In reviewing the sovereign immunity defense and the evidence that Kalyanaram proffered to overcome it, we, like the trial court, may review the pleadings and any other relevant evidence. *Id.* at 554-55.

In a related case, the Dallas Court of Appeals addressed the precise sovereign immunity issues presented here. *See Kalyanaram v. University of Tex. Sys.*, 230 S.W.3d 921, 926-28 (Tex. App.—Dallas 2007, pet. denied) ("*Kalyanaram I*"). There, as here, Kalyanaram argued that

5

*Lawson* precludes the University from claiming sovereign immunity in suits arising from settlement agreements. *See id*. at 926.**³**    In *Lawson*, a faculty member sued Texas A&M University at Kingsville, a State employer, for, among other things, violations of the Whistleblower Act, Texas Government Code sections 554.001 et seq. *See Lawson*, 87 S.W.3d at 518-19. The parties settled and released the claim, and Lawson later sued for breach of the settlement agreement. *Id*. at 519. The university filed a plea to the jurisdiction based on sovereign immunity. *Id*. The supreme court held that the university could not claim immunity from suit for breaching the settlement agreement. *Id*. at 518. It stated: "[H]aving waived immunity from suit in the Whistleblower Act, the State may not now claim immunity from a suit brought to enforce a settlement agreement reached to dispose of a claim brought under that Act." *Id*. at 522-23. The logic of this holding is self-evident: if the government could settle a claim "with an agreement on which it cannot be sued[, that] would limit settlement agreements with the government to those fully performed before dismissal of the lawsuit because any executory provision could not thereafter be enforced." *Id*. at 521.

In *Kalyanaram I*, the court of appeals held that *Lawson* dictated a conclusion that the University did not have sovereign immunity from Kalyanaram's breach-of-contract claim. *Kalyanaram I*, 230 S.W.3d at 927. It stated: "[W]e conclude that Kalyanaram met his burden under the no-evidence standards of rule 166a(i) to produce summary judgment evidence raising a genuine issue of material fact whether his claim for breach of the Settlement Agreement comes within *Lawson*, thus waiving immunity from suit on this claim." *Id*. at 927-28. While Kalyanaram here

---

**³** *Kalyanaram I* initially included a petition for bill of review, but that claim was later dropped. *See* 230 S.W.3d at 923-24.

proceeds by petition for bill of review, without a breach-of-contract claim, his petition still challenges the settlement agreement with the University. Accordingly, we conclude that Kalyanaram's petition for bill of review comes within *Lawson*. *See id*. Thus, sovereign immunity was not a proper basis for summary judgment or dismissal.

### *Fraud*

Kalyanaram argues that his fraud allegations constitute more than a scintilla of evidence that he satisfied the first two requirements of a petition for bill of review. *See Chapman*, 118 S.W.3d at 752 (party seeking fraud-based bill of review must demonstrate (1) he had a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making because of fraud). Regarding fraud-based bills of review, the supreme court has said:

> Fraud in relation to attacks on final judgments is either extrinsic or intrinsic. Only extrinsic fraud will support a bill of review. Extrinsic fraud is fraud that denied a party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. Intrinsic fraud, by contrast, relates to the merits of the issues that were presented and presumably were or should have been settled in the former action.

*Id*. (citations omitted). Under this definition, if the University fraudulently induced Kalyanaram to settle his lawsuits, it committed extrinsic fraud and Kalyanaram has a "meritorious defense" entitling him to dissolve the settlement agreement. *Id*.; *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (party not bound by contract procured by fraud); *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App.—El Paso 2007, no pet.) (settlement agreements subject to same rules as other contracts). For

7

the following reasons, however, we conclude that the Kalyanaram did not produce more than a scintilla of evidence that the University fraudulently induced him to sign the settlement agreement.

Fraudulent inducement has six elements: "(1) a material misrepresentation, (2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury." *Carr v. Christie*, 970 S.W.2d 620, 624 (Tex. App.—Austin 1998, pet. denied) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990)). Kalyanaram argues that these elements were satisfied through the University's misrepresentations that it would: (1) "abandon" the criminal charges against Kalyanaram; (2) "cooperate" with Kalyanaram's criminal defense; and (3) adhere to the terms of the settlement agreement.

Kalyanaram alleges that the University orally represented it would "abandon" its criminal charges if the parties settled. This allegation does not constitute evidence of fraud for two reasons. First, the settlement agreement expressly states that it "constitutes the entire agreement between the parties [and] shall not be varied by . . . oral representation." It also states that the parties "have each read this Agreement, and have consulted with their counsel concerning it, or have had the opportunity during a period of at least 21 days to consult with their counsel and consider the Agreement, and understand that this is a full and final release of all possible claims." Thus, Kalyanaram cannot argue that he relied on oral representations made before the agreement. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731-32 (Tex. 1981) (court will not entertain evidence of extrinsic agreements when contract is clearly integrated). Second, Kalyanaram knew that the University forwarded its allegations to the Collin County District Attorney two years before he

8

signed the settlement agreement. "Abandonment" of the charges against him was therefore in the sole discretion of the District Attorney, not the University, and Kalyanaram cannot plausibly claim to have relied on any representation to the contrary.[4]

For the same two reasons, Kalyanaram cannot plausibly claim to have relied on any oral representations that the University would "cooperate" in his defense. Kalyanaram points to the University's trial and grand jury testimony as evidence that the University did not honor its agreement to cooperate. But even if the University did make a binding oral promise to "cooperate," its agents and employees were (as Kalyanaram admits) legally obligated to testify when subpoenaed. Thus, testifying could not evidence a failure to "cooperate." Kalyanaram counters that appellee Lovitt gave "conflicting" pre- and post-settlement testimony about the propriety of Kalyanaram's actions, which, according to Kalyanaram, suggests fraud. On the contrary, we have reviewed the testimony in question and do not find the purported conflicts.

Finally, Kalyanaram argues that the University's failure to adhere to the settlement agreement shows that its promise to do so was fraudulent. While a promise to adhere to the terms of a settlement agreement can be fraudulent if it is made with no intention to perform, "the mere failure to perform a contract is not evidence of fraud." *Formosa Plastics*, 960 S.W.2d at 48; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 154.071(a) (West 2005) (settlement agreements enforceable

---

[4] In fact, the record indicates that the University did try to "abandon" Kalyanaram's criminal prosecution to the extent it could. Even before the parties settled, appellee Jenifer, the president of UTD, sent a letter on UTD letterhead to the Collin County grand jury stating that "[i]n both my personal capacity and in my representative capacity for U.T. Dallas, which is part of the U.T. System, it is my desire that Dr. Kalyanaram not be indicted or prosecuted in connection with the referred transactions."

in same manner as other contracts). Rather, to show that the University committed fraud, Kalyanaram must present evidence that the University "made representations with the intent to deceive and with no intention of performing as represented. Moreover, the evidence presented must be relevant to [the University's] intent at the time the representation was made." *Formosa Plastics*, 960 S.W.2d at 48 (citing, inter alia, *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)).

None of the University's alleged breaches of the settlement agreement indicate that the University had fraudulent intentions at the time of signing. Kalyanaram first alleges that the University breached the settlement agreement by giving grand jury and trial testimony. He appears to argue that the testimony violated a provision of the settlement agreement preventing University employees from "making defamatory statements which could disparage or otherwise cast aspersions on" Kalyanaram. Construing any of the University's testimony as "defamatory," however, would violate the absolute privilege that attaches to testimony given in connection with judicial proceedings. *See James v. Brown*, 637 S.W.2d 914, 916-17 (Tex. 1982) (testimony given in connection with judicial proceedings cannot be "defamatory"). There is simply no provision of the settlement agreement that the University could have violated by its agents and employees giving grand jury and trial testimony when subpoenaed to do so.

Kalyanaram next alleges that the University violated the settlement agreement by failing to inform him of its ongoing contact with the district attorney's office. Section 4(a)(8) of the settlement agreement states: "UT Dallas will do nothing to interfere with Dr. GK's application for United States citizenship and will notify Dr. GK as soon as practical if contacted by the Immigration

and Naturalization Service or other governmental authorities and will reasonably cooperate with Dr. GK as to such inquiries to the extent permitted by law." Given that this provision concerns Kalyanaram's citizenship application, it is not clear that the phrase "other governmental authorities" encompasses the district attorney's office or that the phrase "such inquiries" encompasses Kalyanaram's criminal prosecution. But even if section 4(a)(8) does encompass criminal prosecution by the district attorney's office, none of the University's contact with the district attorney's office suggests that the University committed fraud when it promised to uphold the settlement agreement. The record indicates that all contact between the University and the district attorney's office pertained either to subpoenas for testimony or to events arising from Kalyanaram's criminal trial in 2002. As already discussed, the former is no indication of fraud.[5] The latter, the record indicates, occurred when Kalyanaram accused a University witness of committing perjury and the University contacted the district attorney's office to discuss a response. Such contact does not suggest that the University had fraudulent intentions when it signed the settlement agreement.

In sum, we hold that Kalyanaram failed to present more than a scintilla of evidence that the University fraudulently induced him to sign the settlement agreement.

*Duress*

Kalyanaram also argues that his duress allegations and proof constitute more than a scintilla of evidence that he satisfied the first two requirements of a petition for bill of review.

---

[5] Kalyanaram claims that Lovitt testified to violating the terms of the settlement agreement. At most, however, Lovitt testified that he did not realize the settlement agreement bound him. This does not raise an inference that the University intended to violate the agreement, especially given that Lovitt did not in fact violate the agreement.

11

*See Chapman*, 118 S.W.3d at 752 (party seeking bill of review must demonstrate (1) meritorious defense to cause of action alleged to support judgment, (2) which he was prevented from making because of wrongful act of opposing party). In other words, Kalyanaram argues that duress is both (1) a "meritorious defense"entitling him to dissolve the settlement agreement and (2) a wrongful action that prevented him from resisting the University's pressure to settle.

The El Paso Court of Appeals addressed this precise argument in a related case, *Kalyanaram v. Burck*, 225 S.W.3d 291, 301-02 (Tex. App.—El Paso 2006, no pet.). It stated:

> To establish a claim for duress, Appellant must show the following elements: (1) a threat or action was taken without legal justification; (2) the threat or action was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it to do that which it would not otherwise have done and was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection.

*Id*. at 301 (citing *McMahan v. Greenwood*, 108 S.W.3d 467, 482 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). Here, as in *Burck*, Kalyanaram argues that the University placed him under duress by threatening to pursue criminal prosecution and deportation. As the *Burck* court noted, however, such threats cannot support a claim for duress:

> [O]nce UTD forwarded [Kalyanaram's] information to the District Attorney, the threat of prosecution no longer emanated from UTD, but rather from the District Attorney's Office. Duress or undue influence can suffice to set aside a contract, but it is well-settled that it must originate from one who is a party to the contract. Courts will not invalidate contracts on grounds of duress when the alleged duress derives from a third person who has no involvement with the opposite party to the contract.

*Id*. at 302 (citations omitted).

12

As in *Burck*, the evidence in the present record shows that Kalyanaram knew that the University forwarded his information to the Collin County District Attorney two years before the settlement agreement was executed; thus, forwarding the information was no longer a threat. Furthermore, criminal prosecution and deportation could only be carried out by the Collin County District Attorney and the Immigration and Naturalization Service; the University itself could not prosecute or deport him. Because the University could not itself carry out any of the threats that allegedly caused duress, Kalyanaram did not present more than a scintilla of evidence to satisfy a duress-based petition for bill of review. *See id.* (only duress coming from other contracting party can suffice to set aside contract).

### *Reformation of the Judgment*

Finally, we note that the trial court's summary judgment order erroneously dismissed Kalyanaram's suit "without prejudice." To the extent that "dismissal" language is appropriate in an order granting summary judgment at all, summary judgment necessarily entails dismissal *with* prejudice. *See Harris County v. Sykes*, 136 S.W.3d 635, 642 (Tex. 2004) (Brister, J., concurring) (citing *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854 (Tex. 1995) (per curiam)); *see also Morris v. Blangger*, 423 S.W.2d 133, 134 (Tex. Civ. App.—Austin 1968, writ ref'd n.r.e.) (dismissal resulting from summary judgment should have been with prejudice). Thus, even though neither party raised the issue on appeal, we reform the judgment by changing the phrase "without prejudice" to "with prejudice." *See Asbury v. State*, 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd) ("The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected

in the trial court. The appellate court may act sua sponte and may have the duty to do so.") (citations omitted); *see also Morris*, 423 S.W.2d at 134 (reforming summary judgment from "without prejudice" to "with prejudice" because court has duty to terminate litigation where nothing in record indicates that appellant could successfully plead cause of action). The order granting summary judgment contains a second error: it states that the trial judge signed it on June 24, 2004, when it is undeniable from the record that he signed it on June 24, 2005. To avoid possible confusion in the future, we also reform the judgment by changing the signature date from June 24, 2004 to June 24, 2005.

## CONCLUSION

While Kalyanaram presented more than a scintilla of evidence that the University waived sovereign immunity, he failed to present more than a scintilla of evidence that the University induced him to sign the settlement agreement through fraud or duress. We reform the trial court's judgment to reflect a dismissal "with prejudice" and to reflect a signature date of "June 24, 2005." We affirm the judgment as reformed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Patterson and Pemberton
  Concurring Opinion by Justice Patterson

Affirmed as Reformed

Filed:  May 20, 2009

14