**Dismissed in Part, Affirmed, and Opinion filed September 20, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00064-CV

## AMBER RAQUEL EMERSON, Appellant

## V.

## THOMAS CHAD EMERSON, Appellee

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Cause No. CV22844**

## O P I N I O N

In this case we consider as a threshold issue whether the parties entered into an enforceable agreement under Texas Rule of Civil Procedure 11 to waive the right to appeal. Concluding that they agreed to waive the right to appeal the trial court's judgment as to any issue regarding interest or attorney's fees and that the agreement is enforceable, we dismiss the appeal to the extent the appellant asserts such issues. As to the remaining issues, we conclude that the appellant has not

shown that the trial court erred. We affirm the trial court's judgment and its sealing order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Amber Raquel Emerson and appellee Thomas Chad Emerson divorced in 2009. In the divorce decree the trial court awarded the marital home to Thomas[1] and awarded $31,055 to be paid to Amber within sixty days following the date of the divorce decree. In 2015, Amber filed a motion to enforce the divorce decree and, alternatively, asked the court to clarify the decree. In the motion for enforcement, Amber requested an owelty lien against the marital home for $31,055 at the "maximum lawful interest rate." Amber also moved for attorney's fees under Texas Family Code section 9.014. In response, Thomas alleged as an affirmative defense that Amber did not perform the actions required under the decree that were necessary for him to refinance the marital home. Thomas also asserted a statute-of-limitations defense.

### A. Rule 11 Agreement on the Record

On the date set for trial in the enforcement proceeding, the parties agreed to a settlement, and the trial judge then recited the judge's understanding of the settlement agreement on the record, which led to the following colloquy:

> [Trial judge]: This case was scheduled for trial today. I think there has been an agreed settlement reached in this case, and I'll recite what I understand the settlement to be. If there's any objections or any disagreement with that, someone needs to say.
>
> It is going to be agreed that Mr. Emerson refinance the property in question here, that any lis pendens that has been filed on that property are [sic] going to be removed by [Amber's counsel]. Once that closing occurs, whatever that check is, if it's under $50,000, for

---

[1] In this opinion we refer to Thomas Chad Emerson and Amber Raquel Emerson by their first names because they have the same last name.

2

example, is going to be turned over to the Court.

The Court is going to take under review [Amber's counsel's] attorney's fees, take up consideration with regard to any postjudgment interest, if any; and once the transaction has occurred with regard to your refinancing and the money has been delivered to the Court, each of you will come into the Court. I will make a ruling on a final judgment, or maybe I could have a conference call and make a ruling on a final judgment and one of the lawyers can bring it up here to save y'all a trip up here. . . .

And the Court is going to look at the — as he has told counsel — going to look at the reasonableness and necessariness [sic] of the attorney's fees. The respondent in the enforcement action, I guess we'll call it, [Thomas's counsel], is — I suppose, is going to make a global objection to the attorney's fees and leave it up to the Court to find what's reasonable and necessary?

[Thomas's counsel]: Yes, Judge.

[Trial judge]: Okay. And I take it — I take it that the petitioner in this case, or plaintiff, however you want to word that, is going to accept the Court's rulings with regard to reasonableness of the attorney's fees; correct?

[Amber's counsel]: Yes, We'll — the Court — we will honor the Court's ruling.

[Trial judge]: Okay. And, so, I don't anticipate further litigation from this lawsuit. It will be final. Okay? And hopefully whatever that is outside of the $31,055 will, in fact, be fair and just for you guys, okay, since you have an interest in it that way.

Is that everybody's agreement?

[Thomas's counsel]: Yes, Judge. I — just for clarification, we've been — somebody has mentioned mandamusing this Court and waiving — going to appeal to the Supreme Court and other things. So, I want to make sure on the record we don't have any of that. When we're saying — [Amber's counsel] says he accepts the ruling of this Court, does that mean he's waiving his right to appeal?

[Trial judge]: Well, I understand what you're saying and I kind of meant it that way, but I'm not going to — I mean, for example, what if I said zero attorney's fees? I think he would have a right to maybe

3

question that, but I think [Amber's counsel] is going into this open-eyed and understands where the Court is going to be with this.

Would that be correct, [Amber's counsel]?

[Amber's counsel]:  Yes, sir.  We would —

[Trial judge]: You might be disappointed in my ruling with regard to judgment interest.  You might be disappointed in the amount of attorney's fees, but you're at least telling me right now this is the way you want to proceed to get that final judgment.

And the Court is ordering — actually, what this is, to me, is kind of a Rule 11 and/or a settlement agreement that's being dictated to the Court.  *The only thing that has to be decided, frankly, is the attorney's fees, basically, and whether I'm going to give any postjudgment interest*, in which I've already mentioned I'm kind of (indicating) on that one because I do — I do think of this — and, you know, we are on the record.

I think that in order to do the right thing, Mr. Emerson is giving up that Motion for the statute of limitations; and that's — that's how I view it.  I think he's trying to do the right thing because I think that might be a closer issue than you think, [Amber's counsel]; but that's not something I'm going to have to rule on if they're agreeing to pay $31,055, which is what the decree said.

[Amber's counsel]:  Right.

[Trial judge]:  So, I just want to be sure that everybody — however we talk about this is [sic] your agreed settlement — is this your agreed settlement at this time?

[Amber's counsel]:  Did I hear the Court say that appellate rights are not being waived?

[Trial judge]:  Well, I said that. But I said [sic] this now: *Agreed settlement, pretty much you're going to agree with whatever the judgment of the Court is.*

[Amber's counsel]: So, the Court is asking me — asking my client *to waive any appellate rights*?

[Trial judge]: I'm asking you if this is your agreed settlement?

[Amber's counsel]: And is part of that settlement *waiving appellate rights*?

4

[Trial judge]: *I would think it would be,* [Amber's counsel].

[Amber's counsel]: May I consult with my client on that point, Your Honor?

[Trial judge]: Yeah. Because I will say this: You know, *the only thing that's going to be appealable is the judgment part, interest, and —*

[Amber's counsel]: *Attorney's fees.*

[Trial judge]: Attorney's fees are appealable; but I think that if you read all the case law on that, that they give wide discretion to the Court.

[Amber's counsel]: I understand that, but *waiving appellate rights* is a big waiver.

. . .

[Amber's counsel]: So, before I agree on the record *to waive my client's appellate rights*, may I confirm — confer with my client?

[Trial judge]: You can certainly do that . . . .

. . .

[Amber's counsel]: Your Honor, as long as it's reciprocal, *my client does waive appellate rights to the decision on the interest and the attorney's fees.*

[Trial judge]: Yeah. And I think if it's an agreed settlement, as we're dictating — or I — or I sort of dictated into the record and ask if y'all agreed, would you agree, [Thomas's counsel]?

[Thomas's counsel]: Yes, Judge.

[Trial judge]: — that that is final and not appealable?

[Thomas's counsel]: Yes, Judge.

[Trial judge]: Would you agree with that, Mr. Fuller?

[Mr. Fuller]: Yes, Your Honor. It's my understanding it's an agreed settlement.

[Trial judge]: Yeah.

[Amber's counsel]: Yes, sir.

. . .

[Trial judge]: The Court will notify the attorneys of what the ruling is

5

going to be, and one or the other — I guess you — will prepare a judgment for the Court. It will be filed. Once the judgment is filed, the Court will release the appropriate funds to the appropriate parties from the Registry of the Court.

And that — [Amber's counsel] has promised, and [Thomas's counsel has promised — and Mr. Fuller is only here for a designated purpose — that this fully settles this case; correct?

[Thomas's counsel]: That's my understanding, yes, Judge.

[Trial judge]: Okay. Correct?

[Amber's counsel]: Yes, sir.

[Trial judge]: Correct?

[Amber]: Yes, sir.

[Trial judge]: Correct?

[Thomas]: Yes, sir.[2]

## B.    The Trial Court's Final Judgment

A few weeks after the hearing, the trial court ordered Amber to execute a "Release of Lis Pendens" and have that instrument recorded. The trial court also ordered the title company to deposit $31,051 from Thomas's refinancing of the marital home into the court registry. The court signed another order allowing Thomas to deposit an additional $597.67 from the title company into the court registry.

A few days later, the trial court signed a final judgment in which the court referred to the parties' agreed settlement. The trial court ordered that $31,055 of the registry funds be tendered to Amber and that the remaining funds be tendered to Thomas. The trial court denied Amber's request for attorney's fees and denied Amber's request for interest on the $31,055.

---

[2] Emphasis added.

## C.  Amber's Motion for New Trial

Amber filed a motion for new trial.  The motion states:

> Movant revokes her agreement stated on the record as it appear [sic] Respondent failed to comply with his agreement.  Specifically, the agreement required Respondent to pay into the registry of the court "all proceeds" from the refinancing of the home in issue.

Amber also asserted that the trial court abused its discretion in failing to award interest and in failing to award any attorney's fees.  The trial court denied Amber's motion for new trial.  Amber timely perfected an appeal from the trial court's final judgment.

Amber now presents a half-dozen issues on appeal, challenging these and other trial court rulings.[3]  Thomas asserts that this court should dismiss the appeal based on the Rule 11 agreement, in which Thomas claims Amber waived her right to appeal all of the rulings Amber challenges on appeal.

## II. ANALYSIS

We address the waiver-of-appeal issue first because if the parties have waived their right to appeal all of the rulings Amber challenges on appeal, then binding precedent calls us to dismiss Amber's appeal without reaching the merits of any other issues presented on appeal.

---

[3] In her appellant's brief, Amber lists the following issues presented: (1) Does the final divorce decree award Amber a money judgment in the amount of $31,055 accruing postjudgment interest as mandated by Texas Finance Code section 304.001, even though the post judgment interest rate is not stated on the decree's face? (2) Did the trial court err in failing to clarify the decree to include postjudgment interest on the $31,055 from the date of the decree? (3) Is the final divorce decree itself an owelty purchase money lien securing the $31,055.00 indebtedness in Amber's favor until the money judgment is satisfied or otherwise discharged? (4) Did the trial court err in failing to award any attorney's fees, court costs, and mediation fees? (5) Did the trial court err in sealing records on January 12, 2017 without following the procedure under Rule 76a of the Texas Rules of Civil Procedure? And (6) Did the trial court err in denying Amber's motion for new trial?

In response to Thomas's argument that we should dismiss this appeal, Amber asserts that (1) the trial court's attempt to "extract an agreement to waive appeal" violated public policy because the court promised to be fair only if Amber waived her right to appeal the trial court's ruling; (2) Amber did not consent to the trial court waiving her property right to interest on the $31,055; (3) the trial court dictated the terms of the agreement; and (4) Thomas waived his right to request that this court enforce the Rule 11 agreement because Thomas did not cross-appeal and amend his pleadings to allege Amber breached the settlement agreement by appealing the judgment. Our threshold task is to determine if the parties have an enforceable Rule 11 agreement to waive the right to appeal.

## A.    Is there a Rule 11 agreement to waive the right to appeal?

Under Rule 11, "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." Tex. R. Civ. P. 11. The parties' Rule 11 settlement agreement was not in writing, signed, and filed with the trial court; instead, the agreement was made in open court and entered of record. *See id*.; *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding that transcript of agreement to terms dictated into record proved Rule 11 agreement).

In a lengthy colloquy, the trial court, Amber's counsel, and Thomas's counsel discussed the terms of the parties settlement agreement that obviated the need for trial in the enforcement proceeding that day. The trial court described the following terms of the settlement:

> (1) Thomas would refinance the property in question to generate money to pay the $31,055 he owed to Amber under the divorce

8

decree;

(2) Amber would release the lis pendens she filed on the property;

(3) the funds from the closing of the refinancing would be deposited in the court's registry;

(4) the trial court then would render a final judgment, ruling on Amber's requests for attorney's fees and for interest on the $31,055, and divide the registry funds between Thomas and Amber; and

(5) Thomas and Amber were waiving their appellate rights.

Amber's counsel at first stated that Amber would "honor" the trial court's ruling on her requests for attorney's fees and postjudgment interest. Thomas's counsel then asked for clarification that Amber was waiving her right to appeal. After initially indicating that perhaps Amber was not waiving all of her rights to appeal, the trial court clarified that, under the proposed settlement, the parties were agreeing with "whatever the judgment of the Court is" and that they were waiving their appellate rights. Amber's counsel then conferred with Amber to confirm that Amber would agree to waiver of the appellate rights. The trial court indicated that the only issues that would be appealable absent a waiver would be the requests for attorney's fees and interest on the $31,055. Amber's counsel stated that "as long as it's reciprocal, my client does waive appellate rights to the decision on the interest and the attorney's fees."

Amber asserts that the trial court dictated the terms of the agreement and she did not consent. The trial judge indicated that he was dictating the terms of the parties' agreement into the record as he understood them; the trial judge did not dictate that the parties must reach a particular agreement. Amber, through her attorney, expressly agreed on the record that she would waive her appellate rights as to the trial court's rulings on Amber's requests for attorney's fees and interest, provided that the waiver was reciprocal. *See Estate of Crawford*, No. 14-17-00703-CV, 2017 WL 5196309, at *1–2 (Tex. App.—Houston [14th Dist.] Nov. 9,

9

2017, pet. denied) (mem. op., per curiam) (holding that the right to appellate review may be waived by express agreement). Thomas, through his attorney, agreed to a reciprocal waiver of his appellate rights. By the terms of the agreement, Amber and Thomas agreed that each of them would waive appellate rights as to the trial court's rulings on Amber's requests for attorney's fees and interest. *See id.*

Before consenting to the waiver, Amber recognized and acknowledged the gravity of the decision to waive appellate rights. She took time out to confer with her counsel and to consider her options. Then, at the end of the process, in open court she plainly waived appellate rights as to the trial court's rulings on her requests for attorney's fees and interest. Though Amber's choice may not have led to the outcome she wanted, because she expressed her intent to waive these appellate rights, we must hold her to her agreement. *See id.*

## B.    Is the agreement void due to duress?

Amber asserts that her waiver of appellate rights is void due to duress. She says that the trial judge pressured her into making the Rule 11 agreement. A claim of duress requires proof that (1) a party made a threat or took action without legal justification; (2) the threat or action was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused the party to do that which the party otherwise would not have done and was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection. *McMahan v. Greenwood*, 108 S.W.3d 467, 482 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Amber does not specify the nature of the alleged threat or even allege that the trial judge made any particular threat or took any particular action without legal justification that overcame Amber's free will. The trial judge stated that he thought Thomas's

10

statute-of-limitations defense might be stronger than Amber's counsel thought, but Amber's counsel, as an attorney, was able to evaluate the trial judge's statement and help Amber make an informed decision. Amber's counsel recognized and acknowledged the significance of waiving appellate rights and when he asked to consult with Amber on that point, the trial judge allowed Amber's counsel to take a break and confer with Amber before making a decision and consenting to the agreement in open court. Nothing in the record raises a genuine fact issue as to whether Amber was under duress when she made the Rule 11 agreement. *See id.*

## C.     Does the Rule 11 agreement violate public policy?

Amber asserts that the Rule 11 agreement violates public policy because the trial court promised to be fair only if Amber agreed to waive her appellate rights. The record does not indicate that the trial judge agreed to be fair only if Amber waived her appellate rights. The trial judge stood ready to go to trial on the enforcement action if the parties had not agreed to settle. The record does not indicate the trial judge resented going to trial or would hold Amber's decision not to settle against Amber in determining the merits of Amber's motion for enforcement or for clarification. Nothing in the record suggests that the trial judge would not treat Amber fairly unless Amber entered a Rule 11 agreement with Thomas. *See Zimmerman v. Zimmerman*, No. 04-04-00347-CV, 2005 WL 1812613, at *2–*3 (Tex. App.—San Antonio Aug. 3, 2005, pet. denied); *Holloway v. Holloway*, 792 S.W.2d 168, 170 (Tex. App.—Houston [1st Dist.] 1990, writ denied). The record contains no factual support for Amber's contention that the Rule 11 agreement violates public policy because the trial judge agreed to be fair only if Amber waived her right to appeal. *See Zimmerman*, 2005 WL 1812613, at *2–*3; *Holloway*, 792 S.W.2d at 170.

11

**D. Should this court enforce the Rule 11 agreement even though Thomas did not plead a breach-of-contract claim and file a cross-appeal?**

Amber asserts that Thomas waived his right to enforce the Rule 11 agreement because Thomas did not amend his pleadings to assert that Amber breached the settlement agreement by appealing from the trial court judgment and because Thomas failed to file a cross-appeal. The trial court's judgment does not adjudicate whether Amber breached the settlement agreement by appealing from the trial court's judgment. Applicable precedent shows that Thomas did not have to amend his pleading in the trial court or file a cross-appeal to seek dismissal of the appeal based on Amber's waiver of her right to appeal in the settlement agreement. *See Estate of Crawford*, 2017 WL 5196309, at *1–2; *In re Long*, 946 S.W.2d 97, 98–99 (Tex. App.—Texarkana 1997, no writ). Thus, Thomas has not waived his right to enforce the Rule 11 agreement and Amber's waiver of her appellate rights.

Because Amber expressly agreed to waive her rights to appeal the trial court's rulings on her requests for attorney's fees and interest and because Amber has not shown that the agreement is unenforceable, we must enforce the parties' agreement and dismiss Amber's appeal as to these issues. *See Estate of Crawford*, 2017 WL 5196309, at *1–2; *In re Long*, 946 S.W.2d at 98–99.

In her first and second issues and her assertions thereunder, Amber does not assign error as to any ruling other than the trial court's rulings on her requests for attorney's fees and interest, nor does Amber brief any argument under these three issues challenging any ruling other than the trial court's rulings on her requests for attorney's fees and interest. In her fourth issue and her assertions thereunder, Amber challenges the trial court's ruling on her requests for attorney's fees. In her

12

third issue and the argument under it, Amber asserts the divorce decree is "an owelty purchase money lien securing the $31,055.00 indebtedness in favor of [Amber] until the money judgment is satisfied or otherwise discharged." Neither in Amber's third issue nor in her argument does she tie this alleged owelty lien to any purported error by the trial court. In her prayer, Amber asks this court to clarify that the money judgment in the divorce decree accrues five-percent postjudgment interest, and she asks this court to render judgment enforcing the divorce decree by imposing an owelty purchase-money lien on the former marital homestead. Amber's third issue relates to her request for interest, and she has not assigned error in this issue or her argument under it as to any alleged error of the trial court other than the trial court's denial of her request for interest. *See Kennedy Con., Inc. v. Forman*, 316 S.W.3d 129, 138 n.10 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Because Amber waived her right to appeal the trial court's rulings on her requests for attorney's fees and interest, we enforce her agreement by dismissing her first three issues and the part of her fourth issue in which she challenges the trial court's ruling on her requests for attorney's fees.[4] *See Estate of Crawford*, 2017 WL 5196309, at *1–2; *In re Long*, 946 S.W.2d at 98–99. We do not dismiss the remainder of Amber's appellate issues.

### E. Has Amber sufficiently briefed her sixth issue and the part of the fourth issue in which she challenges the trial court's failure to award her court costs and mediation fees?

In the part of her fourth issue that we have not dismissed, Amber asserts that the trial court erred in failing to award her court costs and mediation fees. In her sixth issue, Amber asserts that the trial court erred in denying her motion for new trial. Amber states that the trial court erred in denying her motion for new trial

---

[4] We do not address the merits of any of the dismissed issues.

because Thomas did not comply with the parties' agreement that he would deposit all funds he received in the refinancing transaction into the trial court's registry. In her opening brief, Amber has not provided argument or analysis in support of either her proposition that the trial court erred in failing to award her court costs or mediation fees or her proposition that the trial court erred in denying her motion for new trial. Even construing Amber's opening brief liberally, we cannot conclude that Amber adequately briefed an argument that the trial court erred in failing to award her court costs or mediation fees or that the trial court erred in denying her motion for new trial. *See San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Fox v. Alberto*, 455 S.W.3d 659, 663, n.1 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). We find briefing waiver as to these points.[5] *See San Saba Energy, L.P.*, 171 S.W.3d at 337; *Fox*, 455 S.W.3d at 663, n.1. Thus, we overrule the sixth issue and the part of the fourth issue that we have not dismissed.

**F. Did the trial court err during the hearing on the new-trial motion by sealing certain records without complying with Texas Rule of Civil Procedure 76a?**

In her fifth issue, Amber asserts that the trial court erred in ordering certain records sealed at the hearing on her new-trial motion because the trial court failed to comply with Texas Rule of Civil Procedure 76a. *See* Tex. R. Civ. P. 76a. Rule 76a provides that no court order or opinion issued in the adjudication of a case may be sealed and that other court records, as defined in the rule, are presumed to be open to the general public and may be sealed only upon the showing specified in Rule 76a(1). *See id*. For the purposes of Rule 76a, "court records" means "all documents of any nature filed in connection with any matter before any civil court,

---

[5] Even if we had not found briefing waiver as to these points, we still would overrule the sixth issue and the part of the fourth issue that we have not dismissed.

except . . . documents filed in an action originally arising under the Family Code. Tex. R. Civ. P. 76a(2). Amber's action seeking to modify or enforce the trial court's divorce decree under Chapter 9 of the Family Code is an action originally arising under the Family Code. *See In re S.M.B.*, No. 05-14-00745-CV, 2015 WL 3988034, at \*2 (Tex. App.—Dallas Jul. 1, 2015, no pet.) (mem. op.). Under Rule 76(a)'s clear text, the rule did not apply to the trial court's order sealing documents at the hearing on the new-trial motion, and the trial court did not err in failing to comply with Rule76a.[6] *See* Tex. R. Civ. P. 76a; *In re R.C.K.*, No. 09-16-00132-CV, 2016 WL 3197585, at \*3, n.2 (Tex. App.—Beaumont June 9, 2016, no pet.) (mem. op.); *In re S.M.B.*, 2015 WL 3988034, at \*2; *In re Bain*, 144 S.W.3d 236, 241 (Tex. App.—Tyler 2004, orig. proceeding); *Monsanto Co. v. Davis*, No. 10-02-00208-CV, 2004 WL 859159, at \*1 (Tex. App.—Waco Apr. 21, 2004, no pet.) (mem. op.). Finding no merit in Amber's fifth issue, we overrule it.

## G. Should this court impose sanctions on Amber under Texas Rule of Appellate Procedure 45?

In his appellate brief, Thomas asks this court to impose sanctions on Amber under Texas Rule of Appellate Procedure 45 on the basis that Amber filed a frivolous appeal. If, after considering everything in our file, we make an objective determination that an appeal is frivolous, we are authorized to award damages under Rule 45. *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc). *See* Tex. R. App. P. 45. To determine whether an appeal is objectively frivolous, we review the record from the advocate's viewpoint and decide whether the advocate had reasonable grounds to believe the case could be reversed. *Glassman*, 347 S.W.3d at 782. But, Rule 45 does not mandate that this court award damages in every case in which an appeal is

---

[6] Amber has not briefed any other challenge to the trial court's sealing order.

15

frivolous. *Id.* The decision to award such damages falls within this court's discretion, which we exercise with prudence and caution after careful deliberation. *Id.* We conclude that damages under Rule 45 are not warranted in this case. Therefore, we deny Thomas's request.

### III. CONCLUSION

Amber and Thomas entered into a Rule 11 agreement in which they expressly waived their respective rights to appeal the trial court's rulings on Amber's requests for attorney's fees and interest. We reject the arguments Amber has raised to challenge the validity and enforceability of the waiver. Because Amber expressly agreed to the waiver, we enforce that agreement by dismissing her first three issues and the part of her fourth issue in which she challenges the trial court's ruling on her requests for attorney's fees. As to the remaining issues, we conclude that appellant has not shown that the trial court erred. Thus, we dismiss some of Amber's appellate issues and overrule the remaining issues. We affirm the trial court's judgment and sealing order.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Busby and Wise.