In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-19-00183-CV

ASIT CHOKSI, Appellant

V.

ULUPI CHOKSI, Appellee

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-08-10143-CV**

## MEMORANDUM OPINION

Asit Choksi appeals the trial court's Final Decree of Divorce entered in the proceeding involving his wife, Ulupi Choksi.[1] The trial court rendered the decree based on the parties' mediated settlement agreement (MSA). *See* Tex. Fam. Code Ann. § 6.602. Subsequently, the trial court denied Asit's motion for new trial.[2]

---

[1] We refer to the parties by their first names for purposes of clarity.
[2] Asit does not appeal the denial of his motion for new trial.

In three issues, Asit argues that the trial court erred by rendering a final divorce decree based on the parties' MSA because (1) he signed the MSA against his will due to the "looming threat of criminal prosecution," and an MSA procured by fraud, duress or coercion is unenforceable, (2) there was a mutual mistake of fact pertaining to his belief that he could transfer properties on behalf of Choksi, Ltd., and due to this mistaken belief, the MSA is unenforceable, and (3) certain provisions of the MSA are illegal and violate public policy.[3] Ulupi filed a brief and moved to dismiss Asit's appeal, arguing he waived his right to appeal under the terms the parties reached in the MSA. For the following reasons, we affirm the trial court's judgment.

## I. Background

Asit and Ulupi married in 1981. Both parties are physicians, and they acquired extensive community assets, including real estate. Some of the real estate was held by Choksi, Ltd., a limited partnership in which Asit and Ulupi held a ninety-five percent interest. On August 17, 2017, Ulupi called police following an incident where Asit, while intoxicated, allegedly threatened her with a firearm. Police arrested Asit. Ultimately, he was charged with making a terroristic threat. Ulupi sued

---

[3] Ulupi has also filed a motion to dismiss Asit's appeal based on the waiver of Asit's right to appeal contained in the MSA; however, since Asit has raised a claim of duress in the procurement of the MSA, we must first address the MSA's enforceability.

him for divorce the following day. Asit, through counsel, asked Ulupi to mediate the issues in their divorce that were in dispute. Before the mediation, Ulupi's attorney attempted to confirm that Asit had the authority to convey the properties owned by the Choksi partnership. Asit's counsel contacted the mediator's office to facilitate the mediation, and the mediation occurred on July 23, 2018, ending with a signed MSA. Under the terms of the agreement, Asit agreed to transfer much of their real estate, including much of the property held by Choksi, Ltd., to Ulupi. He also agreed to sign the documents required to do so.

In bold and capital letters, the MSA provides:

**AS EVIDENCED BY THEIR SIGNATURES BELOW, THE PARTIES AGREE THAT THIS BINDING MEDIATED SETTLEMENT AGREEMENT IS NOT SUBJECT TO REVOCATION AND IS NOT APPEALABLE. FURTHER, THE ATTORNEYS' SIGNATURES BELOW WERE AFFIXED AFTER THE PARTIES SIGNED THIS AGREEMENT AND IN THE PRESENCE OF THE PARTIES.**

Both parties signed the document, as did their attorneys. The MSA also states, "Each signatory to this Agreement has entered into the settlement freely and without duress after having consulted with professionals of his or her choice" and that the parties "signed voluntarily and with the advice and consent of counsel on the date set out below[.]" (Emphasis original.)

On November 13, 2018, Ulupi moved for entry of judgment based on the MSA. Asit responded to the motion for entry of judgment claiming that "disputes

3

[ ] have arisen regarding the interpretation and/or performance of [the MSA]" and that they further needed to take the "necessary steps to complete the disposition of the remaining assets to be divided as set forth in the [MSA.]" In his response, Asit asked that the "Court refer this matter to arbitration pursuant to the agreed terms of the [MSA]" so the arbitrator could "approve[] all documents related to a final judgment on all issues." The parties then arbitrated to resolve any terms of the drafting disputes, and the arbitrator signed the proposed final decree to confirm he approved and that it conformed to the MSA. On February 14, 2019, Ulupi filed the arbitrator's approved decree with the court as a supplement to her motion for entry of judgment and again urged the trial court to enter judgment.

While the criminal charges were pending, Asit, an oncologist, lost his privileges to practice at several of the local hospitals. In the trial court and in his appeal, he claims the loss of his privileges has adversely affected his ability to make a living. During the evidentiary hearing on Ulopi's motion to enter judgment, Asit claimed he was forced to sign the agreement due to the looming threat presented by his indictment, which interfered with his ability to consider the advice he was given by his attorneys.

On February 14, 2019, Asit filed a supplemental response to Ulupi's motion to enter judgment. He asked the trial court to set aside the MSA, to conduct an evidentiary hearing, and to compel Ulupi's deposition, based on his claims alleging

4

he signed the MSA while under duress. He attached his declaration to the motion, claiming Ulupi falsely accused him of making terroristic threats. While Asit was released following his arrest, the trial court in his criminal case ordered that he not engage in any conduct that would "harass, annoy, alarm, abuse, torment, or embarrass Ulupi[.]" Asit further claimed Ulupi "used the continued threat of criminal prosecution against [him] to gain substantive advantage over [him] in the[] divorce proceedings[,]" but he did not specify how she did so. Asit claimed that to maintain his hospital privileges, he had to disclose whether he had ever been arrested, and during the course of the criminal case, Ulupi "directly caused [him] to lose [his] hospital privileges" at several local hospitals. He asserted "[u]pon information and belief[,]"Ulupi reported the fact he had been charged in a criminal case to the Texas Medical Board, a charge that threatened his ability to maintain his license. Boiling it down, Asit asserted in his declaration that when he signed the MSA, he felt he "had no choice[,]" he was not exercising free will when he signed it, and he was unable to evaluate whether to follow the advice he received from his lawyer.

The trial court held an evidentiary hearing prior to entry of judgment. The evidence in the hearing shows that Asit was represented by two attorneys during the mediation. He communicated with the mediator and his attorneys but no others during the mediation. Asit testified in the hearing that he did not communicate

5

directly with Ulupi or her legal counsel during the mediation, but he admitted that before the mediation, he drafted a letter that he asked Ulupi to sign. After the mediator revised the letter, he presented it to Ulupi and her attorney.

Ulupi also testified at the evidentiary hearing. She testified that shortly before Asit's arrest, she called 9-1-1 because she was scared. She explained that another physician was at her house who was also frightened by Asit's actions. The police came to the house and questioned her. According to Ulupi, neither she nor anyone at her request notified the Texas Medical Board or any hospitals about any matters that might have threatened Asit's credentials.

Following the evidentiary hearing, the trial court granted the motion for entry of judgment and signed the final divorce decree. Asit filed a motion for new trial, arguing he signed the MSA under duress and the property division was not "just and right." The trial court denied the motion and found as follows: (1) neither party claimed that the MSA failed to meet the requirements of Texas Family Code section 6.602(b); (2) the parties signed the MSA in July of 2018, and the first time Asit raised duress was almost seven months later, after he had requested arbitration per the MSA; (3) Asit delayed the proceedings by causing a lawsuit to be filed in Harris County, Texas that resulted in a Temporary Restraining Order being signed in that court on the basis that Asit then claimed he had no authority to enter into some of the property settlement agreements contained in the MSA, and after the Harris

County Court conducted a hearing on the temporary injunction and denied it, the Court set the competing motions for entry and motion to set aside the MSA for hearing; and (4) the evidence and arguments made at the evidentiary hearing on the motion to set aside the MSA did not support the requested relief, and it was correctly denied.

## II. Standard of Review

Whether a mediated settlement agreement complies with the Texas Family Code's requirements is a question of law reviewed de novo. *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 241 (Tex. App.—Austin 2007, pet. denied); *see also Crowson v. Crowson*, No. 03-11-00795-CV, 2013 WL 6665022, at \*4 (Tex. App.—Austin Dec. 13, 2013, pet. denied) (mem. op.). "We review a trial court's decision not to set aside a mediated settlement agreement for an abuse of discretion." *In re C.H., Jr.*, 298 S.W.3d 800, 804 (Tex. App.—Dallas 2009, no pet.); *see also In re Marriage of Atherton*, No. 14-17-00601-CV, 2018 WL 6217624, at \*2 (Tex. App.—Houston [14th Dist.] Nov. 29, 2018, pet. denied) (mem. op.); *Crowson*, 2013 WL 6665022, at \*4. If there is some substantive, probative evidence to support the decision, a trial court does not abuse its discretion. *Crowson*, 2013 WL 6665022, at \*4 (citations omitted). A trial court abuses its discretion if it acts unreasonably, arbitrarily, or without reference to any guiding rules or principles. *Downer v.*

7

*Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) (citations omitted).

### III. Analysis

In the present case, Asit argues in three issues that the MSA is unenforceable because (1) it was procured by threats of criminal prosecution against him, (2) it was the result of a mutual mistake, and (3) portions of the MSA call for relinquishing the right to sue third parties and interfere or require evidence relevant to Asit's criminal case to be destroyed.

### A. Law Pertaining to MSAs

A mediated settlement agreement (MSA) meeting certain statutory requirements set forth in the Texas Family Code "is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) (citing Tex. Fam. Code Ann. § 6.602(b)–(c)). The statute provides:

> (b) A mediated settlement agreement is binding on the parties if the agreement:
> > (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
> > (2) is signed by each party to the agreement; and
> > (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.
> (c) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

Tex. Fam. Code Ann. § 6.602(b)–(c). Several of our sister courts of appeals have interpreted the statute to mean that a trial court is not required to enforce an MSA that is illegal or procured by fraud, duress, coercion, or other dishonest means. *See Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.—El Paso 2010, no pet.); *Spiegel*, 228 S.W.3d at 242; *In re Marriage of Joyner*, 196 S.W.3d 883, 890 (Tex. App.—Texarkana 2006, pet. denied); *Boyd v. Boyd*, 67 S.W.3d 398, 403–05 (Tex. App.—Fort Worth 2002, no pet.); *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). The Texas Supreme Court has not addressed whether procurement of an MSA by duress, fraud, coercion or is illegal makes an otherwise statutorily-compliant MSA unenforceable.[4] *See Milner*, 361 S.W.3d at 619 (noting in an MSA case, the Court was "leav[ing] the applicability of those defenses for another case"); *see also Highsmith v. Highsmith*, 587 S.W.3d 771, 777 n.5 (Tex. 2019) ("As in *Milner*, we need not and do not address whether an MSA that complies with the statutory formalities may nevertheless be set aside on the ground that it is illegal or was procured by fraud, duress, or coercion"). Since an MSA is a contract, general contract-interpretation principles determine its meaning. *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017) (citation omitted).

---

[4] For purposes of this opinion we assume, without deciding, that a valid claim of duress would justify setting aside an MSA.

Neither party challenges that the MSA complied with the statute, and the record establishes that the MSA met requisite statutory elements. *See* Tex. Fam. Code Ann. § 6.602(b)–(c). The statement regarding the MSA's irrevocability was conspicuous, as it was capitalized and in bold. *See id.* § 6.602(b)(1). The parties and their attorneys signed the MSA. *See id.* § 6.602(b)(2)–(3). Accordingly, absent a defense to the MSA that makes it unenforceable, the trial court had to render a decree consistent with the terms in the parties' MSA. *See id.* § 6.602(c).

## B. Issue One: Duress

In his first issue, Asit claims that the MSA is unenforceable because it was procured by duress—the threat of a criminal prosecution that would undermine his ability to maintain his standard of living. Assuming, without deciding, that duress is an available defense to an MSA, we agree with the trial court that Asit did not meet his burden to prove it applied to the MSA he signed. The party seeking to avoid enforcement of the MSA bears the burden to show the agreement is unenforceable. *In re Marriage of Fannette*, No. 10-12-00141-CV, 2013 WL 3533238, at *5 (Tex. App.—Waco July 11, 2013, pet. denied) (mem. op.). Thus, Asit bore the burden of proof on his claim of duress. *See id.*

Duress involves improper or unlawful conduct or the threat of the same that is intended to and actually interferes with another person's exercise of free will and judgment. *Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878–79 (Tex.

10

2005); *In re D.E.H.*, 301 S.W.3d 825, 829 (Tex. App.—Fort Worth 2009, pet. denied). To establish duress, Asit had to prove the following:

> (1) a threat or action was taken without legal justification; (2) the threat or action was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it do that which it would not otherwise have done and was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection.

*Kalyanaram v. Burck*, 225 S.W.3d 291, 301 (Tex. App.—El Paso 2006, no pet.) (citations omitted). Our sister court, the Fourteenth Court of Appeals, explained that the threat of criminal prosecution to pressure someone to execute a contract is itself a wrongful use of the criminal justice process that may present the trier of fact with an issue of fact on a party's claim of duress. *See Weinberg v. Baharav*, 553 S.W.3d 131, 135 (Tex. App.—Houston [14th Dist.] 2018, no. pet.). Here, the issue is whether Asit established Ulupi intentionally threatened Asit with an imminent criminal prosecution to interfere with Asit's exercise of his free will and judgment.[5] *See id.* at 136. The trial court decided the answer to that question was no. When acting as the factfinder, the trial court "is the sole judge of witness credibility and the weight to give witnesses' testimony." *In re Marriage of Lopez*, No. 14-18-00797-CV, 2020

---

[5] The Fourteenth Court of Appeals also noted that in making this determination they followed the majority rule which did not require proof that the party was innocent of the criminal allegations. *See Weinberg v. Baharav*, 553 S.W.3d 131, 136 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

11

WL 4523594, at *2 (Tex. App.—Houston [14th Dist.] Aug. 6, 2020, no pet.) (mem. op.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)).

The record shows the criminal prosecution occurred following an incident at the parties' home on August 17, 2017, which was almost a year before mediation. While Asit claims Ulupi refused to drop the criminal charges she initiated against him unless he agreed to her proposed division of the marital estate, the record shows Asit wanted her to do so as part of the mediation and that he was the party that injected that issue into the negotiation process. Ultimately, Ulupi agreed to a proposal the mediator made that was relevant to the charges, which Asit also signed. Thus, the letter that Ulupi and Asit signed differed from the version Asit initially proposed. When asked whether Asit demanded that his wife sign the letter, he said he "did not demand anything" but he "would like [the letter] to be signed so that my criminal charges will go away." Asit also agreed he never had any direct contact with Ulupi or her legal counsel during the mediation.

Ulupi also disputed Asit's claim that she contacted the Texas Medical Board and informed it about the charges in his criminal case. Ulupi testified that she nor anyone at her request ever contacted the Texas Medical Board about Asit's case. While Ulupi agreed that she had "one or two" conversations with the prosecutor about the criminal case, she also testified she never called the prosecutor. She additionally denied notifying any hospitals about matters that were relevant to Asit's

12

credentials. Nothing in the record contradicts Ulupi's testimony that, beyond calling the police in August 2017 to report that Asit had threatened her, she did not take an active role in the investigations that resulted as they related to Asit's medical license or privileges in those places where Asit practiced medicine.

In the context of duress, "compulsion must be actual and imminent, and not merely feigned or imagined." *Bolton*, 185 S.W.3d at 879. Duress must be established based on the conduct of the party accused of duress rather than the emotions of the alleged victim. *Weinberg*, 553 S.W.3d at 134. Therefore, we focus on Ulupi's conduct rather than Asit's emotions. *See id.*

The Austin Court of Appeals addressed this issue in *Kalyanaram* and held an ongoing threat of continued criminal prosecution cannot support a claim for duress. *Kalyanaram v. Univ. of Tex. Sys.*, No. 03–05-00642-CV, 2009 WL 1423920, at *6 (Tex. App.—Austin May 20, 2009, no pet.) (mem. op.). Here, the evidence established that Ulupi did not make any imminent threat of criminal prosecution to Asit to procure his signature on the MSA. Rather, the record established that Asit knew Ulupi complained to the police of his actions on August 17, 2017. *See id.* (explaining where appellant knew that opposing party forwarded his information to the district attorney two years before the settlement agreement was executed, forwarding the information was no longer a threat); *see also Burck*, 225 S.W.3d at

13

302. The only evidence before us established that Ulupi contacted law enforcement with her criminal complaint almost a year before the parties executed the MSA.

For duress or undue influence to suffice to set aside a contract, "it must originate from one who is a party to the contract[,]" and courts will not set aside a contract "when the alleged duress derives from a third person who has no involvement with the opposite party to the contract." *See Burck*, 225 S.W.3d at 302 (citations omitted). Once Ulupi called the police, any criminal prosecution was out of her hands, and any "threat of prosecution no longer emanated from [appellee], but rather from the District Attorney's Office." *See id.* (citations omitted). Apart from Ulupi's initial phone call to the police, there is no evidence of any conduct she engaged in pertaining to the criminal prosecution.

The trial court, as the factfinder, was free to believe Ulupi's testimony and disbelieve Asit's bald assertions to the contrary. *See Lopez*, 2020 WL 4523594, at *2 (explaining the factfinder is the sole judge of witness credibility and the weight to give their testimony). We conclude that given the testimony in the hearing, the trial court could have reasonably determined that Asit, not Ulupi, required the terms of the MSA to include matters that were related to Asit's criminal case before he would agree to sign the MSA. We hold the trial court did not abuse its discretion in refusing to set aside the statutorily compliant MSA. We overrule Asit's first issue.

## C. Issue Two: Mutual Mistake

In his second issue, Asit contends that "due to the mutual mistake that he could convey property that he did not own, the MSA included provisions where he agreed to convey property owned by Choksi, Ltd." "Mutual mistake occurs when the parties to an agreement have a common intention, but the written instrument does not reflect that intent." *Toler v. Sanders*, 371 S.W.3d 477, 481 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Dyer v. Cotton*, 333 S.W.3d 703, 718 (Tex. App.—Houston [1st Dist.] 2010, no pet.)).

We disagree the evidence establishes the MSA contains terms on which parties made a "mutual mistake." First, the evidence fails to show that the agreement does not express the parties' intent. And even if it did, the evidence fails to show the alleged mistake is one that was either mutual or inconsistent with what Ulupi intended.

The record shows that prior to mediating the matter, the attorneys for the respective parties communicated about Asit's authority to convey title to the various properties to the extent title was held by the family partnership. Asit participated in the mediation with two attorneys present on his behalf and executed the MSA after extensive negotiations, without ever raising any issue about his lack of authority to execute the necessary documentation to transfer ownership of property held by the family partnership. It was not until sometime after mediation and arbitration that

15

Asit sought and obtained a temporary restraining order on behalf of Choksi, Ltd. in Harris County which prohibited Ulupi from "[p]urs[u]ing any motion to enforce the MSA to the extent it purports to require Choksi, Ltd. to convey property without compliance with the terms of the partnership agreement."[6] However, neither the partnership agreement or its terms have been made a part of the record before us. Absent such evidence, Asit has failed to show that any provision of the MSA required a property transfer in violation of the partnership agreement or that the transfers outlined in the MSA were inconsistent with the partnership agreement. Asit cannot misrepresent his authority to transfer properties at a mediation, sign an MSA, move to arbitrate under the terms of the MSA, and then seek to have the MSA set aside based on his misrepresentation of authority by characterizing it as a "mistake." We overrule issue two.

**D. Issue Three: Illegality**

In his last issue, Asit contends the MSA contains provisions that are illegal and violate public policy. Specifically, he asserts that certain portions of the MSA call for relinquishing rights controlled by third parties' to sue, while other portions require the parties to interfere with proceedings that involve ongoing civil and criminal matters involving Asit. But Asit fails to identify where the MSA requires

---

[6] The record indicates that the Harris County Court ultimately denied the injunction.

16

third parties to relinquish any rights or requires anyone to interfere in any other proceedings related to his criminal case. Rather, it appears that Asit contends that by getting Ulupi to agree to the terms of the letter she signed that he hoped to use to get the prosecutor to drop his criminal case, the MSA is illegal.

But these arguments were never raised in the trial court or in Asit's motion for new trial. We hold that Asit failed to preserve these arguments for our review. *See* Tex. R. App. P. 33.1(a) (requiring a party to show he complained to the trial court with a timely request, objection, or motion).

Even had Asit done so, however, his arguments still lack merit. Asit relies on *In re Kasschau*, to support his argument in his brief. *See* 11 S.W.3d at 314. In that case, a husband made illegal recordings of his wife with third parties, and the settlement provided that the recordings would be destroyed. *See id* at 312. The court found the destruction of evidence related to a possible criminal proceeding was illegal and refused to enter judgment on the agreement. *See id* at 314. But here, the MSA does not contain any provisions that call for any evidence in Asit's criminal case to be destroyed. While Asit points to the letter that Ulupi signed in the mediation, the letter is not part of the MSA. Moreover, the letter does not require

anyone to destroy evidence, call for Ulupi to change her testimony, or require her to refuse to cooperate with the prosecutor in Asit's criminal case.[7]

---

[7] In its entirety, the letter signed by both parties provided as follows:

To Whom it May Concern:

This letter explains the context and some chronology leading up to the events that occurred on August 17 and 18, 2017 and the subsequent divorce action.

Asit and Ulupi Choksi have been married for 37 years. We have raised 3 children who are now grown and on their own.

There has been stress during the marriage, which increased in severity in 2016 and 2017. The event (sic) that occurred in the home on August 17 and 18, 2017 were regrettable and likely a result of this increased stress. Furthermore, the events on that date have caused us both additional suffering for each and the family as a whole.

Neither party admits guilt as a result of the August 17 and 18, 2017 event.

Asit getting upset, threatening to commit suicide with his history of possible infidelity and Ulupi calling the police to report the threats resulting in Asit's arrest and charges being filed were regrettable.

We regret the unfortunate events of August 17 and 18, 2017.

Both of us will use our best efforts to move forward without further harm or problems for each other, and reject feelings of hostility or anger towards each other.

Both of us will use our best efforts to not disparage each other in the presence of family or friends.

We dismiss issue three for failure to preserve error.

**E. Motion to Dismiss: Waiver of Right to Appeal**

In response to Asit's appellate brief, Ulupi filed a motion to dismiss the appeal based on the language in the MSA waiving the parties' right of appeal. Having determined that Asit's arguments for setting aside the statutorily compliant MSA lack merit and that the MSA is enforceable, we now turn to whether the parties waived their right to appeal. Parties can waive their right to appeal. *See Huber v. Huber*, No. 04-17-00326-CV, 2018 WL 1831655, at *4–5 (Tex. App.—San Antonio Apr. 18, 2018, pet. denied) (mem. op.) (in the context of an informal settlement agreement, holding parties waived their right to appeal); *see also Matter of Estate of Spiller*, No. 04-18-00522-CV, 2019 WL 2360100 at *2 (Tex. App.—San Antonio June 5, 2019, pet. denied) (mem. op.) (analyzing waiver in the context of Rule 11 agreement); *Emerson v. Emerson*, 559 S.W.3d 727, 729 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (concluding parties waived right to appeal in Rule 11 agreement and dismissing appeal).

The language here, however, is distinct from the cases cited. The language the parties used in this MSA was "**THE PARTIES AGREE THAT THIS BINDING**

---

We will use our best efforts to maintain a friendly relationship with each other so that neither of us hurts each other or our children.

To the extent that one of us was hurt or upset by the other party's actions, an apology is given as it was never the intent to hurt that party.

19

**MEDIATED SETTLEMENT AGREEMENT IS NOT SUBJECT TO REVOCATION AND IS NOT APPEALABLE.**" The language in *Huber* differed in that it expressly stated that "[t]he parties waive their right to file and/or prosecute a motion for new trial or appeal[.]"[8] *Huber*, 2018 WL 1831655, at \*1. The language in the MSA before us is akin to the language found in *Center Rose Partners, Ltd. v. Bailey*, which was that "arbitrators' decisions" were "non-appealable." *See* 587 S.W.3d 514, 523–24 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

In determining the parties did not agree to waive their right to appeal, the Fourteenth Court of Appeals reasoned "the parties agreed that the Award would be non-appealable, not that the trial court's *judgment* on the Award would be non-appealable." *Id.* at 524 (emphasis added). Similarly, Ulupi and Asit agreed that the MSA was not appealable rather than the actual judgment on the MSA.[9] More importantly, there is no language indicating a waiver of the *right* to appeal, and we presume had they wanted to do so, the parties would have included that language.

---

[8] Appellee also cites *Connor v. Connor* for the proposition that the appellant could waive the right to appeal in an MSA. *See* No. 01-17-00268-CV, 2018 WL 3542911, at \*1 (Tex. App.—Houston [1st Dist.] July 24, 2018, pet. denied) (mem. op.). The dismissal opinion in that case does not contain any of the express language from the MSA, it merely notes that the appellant waived her right to appeal the trial court's order. *See id.*

[9] While we recognize that arbitration awards are unique, the binding nature of MSAs are similar, and if an MSA complies with the statute, courts make no independent review of whether "the property division is 'just and right[.]'" *See Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) (quoting *In re Marriage of Joyner*, 196 S.W.3d 883, 889, 891 (Tex. App.—Texarkana 2006, pet. denied)).

Instead, the MSA characterizes the agreement itself as something that is "not appealable." In this specific context, we cannot conclude that the parties intended to waive their right to appeal the trial court's judgment based on the MSA's language. Accordingly, we deny Ulupi's motion to dismiss.

**F. Rule 45 Sanctions**

By way of cross-point and in her motion to dismiss, Ulupi contends that this court should sanction Asit pursuant to Texas Rule of Appellate Procedure 45. *See* Tex. R. App. 45. Ulupi contends Asit's appeal is "objectively frivolous," because he waived his right to appeal in the MSA, and she further argues that he has "demonstrated a continued pattern of obstruction and delay in the face of the MSA[.]" *See id.* If an appellate court determines that an appeal is frivolous, Rule 45 allows it to award "just damages." *See id.* "Whether to grant sanctions for a frivolous appeal is a matter of discretion that this court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances." *Goss v. Hous. Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Cook v. Izen*, No. 09-17-00025-CV, 2019 WL 385926, at *8 (Tex. App.—Beaumont Jan. 31, 2019, no. pet.) (mem. op.).

While we agree that the trial court's motion for new trial mentioned repeated delays by Asit, we cannot agree with Ulupi that his appeal was "objectively frivolous," as we have determined above that the MSA language did not constitute

a waiver of his right to appeal. We are mindful of Ulupi's frustrations, but we note that "Rule 45 does not require this court to award just damages after every frivolous appeal; rather, the award of damages is a discretionary decision 'exercise[d] with prudence and caution after careful deliberation.'" *Jacobs v. Jacobs*, No. 14-12-00755-CV, 2013 WL 3968462, at \*3 (Tex. App.—Houston [14th Dist.] Aug. 1, 2013, no pet.) (mem. op.) (citations omitted) (refusing to sanction husband where parties had signed MSA when dispute arose over arbitration provision and transfer of assets despite husband's "attempts to delay the proceedings below and in [the] interlocutory appeal"). Applying our discretion, we decline to award Rule 45 damages.

## IV. Conclusion

The trial court did not abuse its discretion when it determined the MSA was not procured under duress, was therefore enforceable, and rendered a final divorce decree based on the statutorily compliant MSA. We affirm the trial court's judgment.

AFFIRMED.

                                        _____

                                          CHARLES KREGER
                                          Justice

Submitted on October 6, 2020
Opinion Delivered November 19, 2020

Before McKeithen, C.J., Kreger, and Horton, JJ.